MILDRED COLLINS BEAVER, PLAINTIFF, v. P. L. LEDBETTER AND WIFE, KATHERINE H. LEDBETTER, DEFENDANTS.

(Filed 20 January, 1967.)

**1. Mortgages and Deeds of Trust § 15—**

Where all the evidence, uncontradicted, tends to show that upon conveyance of property subject to a deed of trust to a husband and wife, the husband agreed to assume and pay the indebtedness, and that the deed containing the debt assumption agreement was delivered to him and accepted by him, the holder of the note secured by the instrument is entitled to peremptory instructions against the husband in an action on the debt assumption agreement.

**2. Husband and Wife § 3—**

The marital relationship raises no presumption that the husband is authorized to act as agent for the wife.

**3. Mortgages and Deeds of Trust § 15—**

Evidence that a deed to husband and wife contained an agreement by the grantees to assume and pay off a prior mortgage indebtedness on the land, that the deed was delivered to the husband alone and that all communications relating to the transaction were had with him alone, and without any evidence that the wife knew of the debt assumption agreement or had knowledge of the existence of the deed, or received any benefit from the transaction, or did anything indicating a ratification thereof, is insufficient to make out a case against the wife in an action by the holder of the note on the debt assumption agreement.

**4. Same—**

A debt assumption agreement by the grantee of land is a personal contractual undertaking relating to the consideration.

**5. Same; Deeds § 18—**

While the registration of a deed raises the presumption of delivery and ordinarily binds the grantee to covenants contained therein which run with the land, registration raises no presumption that the grantee agreed to a collateral contractual provision in the deed for the assumption by the grantee of a prior mortgage indebtedness on the land.

APPEAL by defendants from *McLean, J.,* March 21, 1966, Schedule "A," Civil (Jury) Session, of MECKLENBURG.

Plaintiff seeks to recover from defendants on their alleged assumption and agreement to pay a $12,000.00 purchase money note executed and delivered by Hagerty Realty Corporation (Hagerty) to plaintiff.

Plaintiff sold and conveyed to Hagerty a lot in Charlotte on which an 8-unit apartment is located. Hagerty executed (1) a first lien deed of trust to I. O. Brady, Trustee, as security for Hagerty's debt of $25,000.00 to Durham Life Insurance Company for money borrowed, and (2) a second lien deed of trust to Brock Barkley, Trustee, as security for Hagerty's $12,000.00 purchase money note to plaintiff. The $12,000.00 note bears interest from date (July 12, 1963) and is payable in monthly installments. Provision is made for the entire balance to become due and payable immediately if there is default in respect of any installment.

A deed dated March 22, 1965, recorded on April 16, 1965, in Book 2637, p. 127, Mecklenburg Registry, executed by Hagerty, purports to convey said property to P. L. Ledbetter and wife, Katherine H. Ledbetter. The deeds of trust in favor of Durham Life Insurance Company and plaintiff are excepted from the warranty provisions and it is set forth that "the parties of the second part" assume and agree to pay, *inter alia,* "that certain obligation due to Turner Brothers for rental and maintenance in the amount of $642.05," and "the balance due Mildred C. Beaver on the aforesaid deed of trust . . . ."

There was evidence tending to show a foreclosure of the deed of trust to Brady, Trustee, was completed on July 27, 1965. Plaintiff alleged "the property was bid in at a price sufficient only to pay the balance of the indebtedness to Durham Life Insurance Company and the expenses of the sale." Defendants' brief contains a statement to this effect.

Defendants, answering, alleged in substance: Katherine H. Ledbetter had no part in or knowledge of any transaction involving said property. In February or March 1965, a representative of Hagerty proposed a sale of said property to P. L. Ledbetter; that P. L. Ledbetter "made no down payment or any other payment on said property and never consummated the contract proposed by Hagerty Realty Corporation"; and that, notwithstanding P. L. Ledbetter had neither accepted nor rejected Hagerty's proposal, Hagerty, without instructions from P. L. Ledbetter, caused said deed dated March 22, 1965, to be prepared and recorded.

A summary of the testimony of each of the witnesses for plaintiff is set forth below.

Plaintiff's testimony: The last payment on the $12,000.00 note was made in March 1965, leaving an unpaid principal balance of $10,738.80. She had five telephone conversations with P. L. Ledbetter with reference to his purchasing her second mortgage or making payments thereon. He assured her he would come over "in about two weeks" to talk about it and try "to get together with (her) on it." She had no communication or contact with P. L. Ledbetter except in these telephone conversations. She had no contact or communication whatsoever with Katherine H. Ledbetter.

Testimony of John G. Turner: He collected the rents from said apartments as rental agent for Hagerty through March 1965. Thereafter the statements were mailed to Mr. P. L. Ledbetter, 252 Union Cemetery Road, Concord, North Carolina. Turner's check dated June 10, 1965, for $108.85, payable to P. L. Ledbetter, was mailed, apparently with the June statement, to Mr. P. L. Ledbetter. It was endorsed, paid by the drawee bank and returned to Turner. The April and May statements showed the receipts had been applied to reimburse Turner for the amount he had expended from his own funds while acting as rental agent for Hagerty. The July statement showed receipts for twenty-one days and the expenditure of all except $4.75 retained by Turner to cover an outstanding expense item.

Testimony of Raymond L. Jordan: He is a brother-in-law of Mrs. Beaver, the plaintiff. He knew Mr. Ledbetter and was in contact with him "some time after March or April." He contacted Mr. Ledbetter "to determine the fact that the property had changed ownership to *him* in accordance with the statement of Mr. Hagerty." (Our italics.) Mr. Ledbetter told him that *he* had purchased the property; that *he* knew Mrs. Beaver was holding a second mortgage on it; and that *he* intended to send the payments to Mrs. Beaver. Later, Mr. Ledbetter said the apartment was not working out the way he expected; that it had been misrepresented to him by Hagerty; but that "he would try to make some arrangements for Mrs. Beaver and work it out."

Testimony of James A. Hagerty: He lives in Concord, North Carolina. As president of Hagerty Realty Corporation, "(he) handled the transaction of this sale of the apartment house to Mr. & Mrs. Ledbetter." He delivered the deed personally to Mr. Ledbetter. He had drafted it "according to (their) agreement." "*Mr.* Ledbetter was told the terms of the $12,000.00 second mortgage and *he* agreed to assume it." (Our italics.) He had no conversation with Mrs. Ledbetter except that he "chatted with her in her house waiting for him (Mr. Ledbetter) to come, but nothing concerning this transaction."

Defendants did not offer evidence.

The motion of each defendant for judgment of nonsuit was denied. With reference to each of the three issues, the court gave a peremptory instruction in favor of plaintiff.

The issues submitted, and the jury's answers, are as follows: "1. Did the defendant P. L. Ledbetter assume and agree to pay the indebtedness to the plaintiff referred to in the complaint? ANSWER: Yes. 2. Did the defendant Katherine H. Ledbetter assume and agree to pay the indebtedness to the plaintiff referred to in the complaint? ANSWER: Yes. 3. What amount, if any, is the plaintiff entitled to recover? ANSWER: $10,738.80, with interest from April 1, 1965."

In accordance with the verdict, the court entered judgment providing "that the plaintiff have and recover of the defendants, jointly and severally, the sum of $10,738.80 with interest thereon from the 1st day of April, 1965, and the costs of this action to be taxed by the clerk." Defendants excepted and appealed.

*Brock Barkley for plaintiff appellee.*
*Kenneth B. Cruse for defendant appellants.*

BOBBITT, J. Plaintiff bases her right to recover on this well settled legal principle: Where a purchaser of mortgaged land, by a valid and sufficient contract of assumption, agrees with the mortgagor, who is personally liable therefor, to assume and to pay the mortgage debt, such agreement inures to the benefit of the holder of the mortgage; and the holder of the mortgage can maintain an action at law on such agreement. *Baber v. Hanie,* 163 N.C. 588, 80 S.E. 57, 12 A.L.R. 1518; *Bank v. Page,* 206 N.C. 18, 173 S.E. 312; 4 Corbin on Contracts, § 796.

The general rule is stated in 59 C.J.S., Mortgages § 407, as follows: "A grantee who *with knowledge of its contents* accepts a conveyance which requires him to assume the payment of an existing mortgage becomes personally liable therefor even though he does not sign the deed or was not present when the grantor signed and acknowledged it, and even in the absence of an antecedent agreement to assume, and without entry of possession." (Our italics.) Accord: 37 Am. Jur., Mortgages § 994.

The motion of P. L. Ledbetter for judgment of nonsuit was properly overruled. In addition to the testimony of plaintiff, of Turner and of Jordan, with reference to their dealings with P. L. Ledbetter, there was the direct and positive testimony of James A. Hagerty that, prior to the delivery of the deed, P. L. Ledbetter had agreed to assume and pay Hagerty's debt to plaintiff, and that the deed containing the assumption agreement was delivered by him in person to

P. L. Ledbetter when the sale was consummated. There was no evidence tending to support the *allegations* of P. L. Ledbetter to the effect the transaction was not consummated. Since all the evidence tends to support plaintiff's allegations as to P. L. Ledbetter's agreement to assume and pay Hagerty's note to plaintiff and as to the amount of the unpaid balance thereon, there was no error as to P. L. Ledbetter in the peremptory instructions in plaintiff's favor with reference to the first and third issues.

We consider now whether the motion of Katherine H. Ledbetter for judgment of nonsuit should have been allowed.

"A husband is not *jure mariti* the agent of his wife, and if such agency is relied upon it must be proven." *Pitt v. Speight,* 222 N.C. 585, 588, 24 S.E. 2d 350, 351, and cases cited. "No presumption arises from the mere fact of the marital relationship that the husband is acting as agent for the wife. There must be proof of the agency." *Air Conditioning Co. v. Douglass,* 241 N.C. 170, 173, 84 S.E. 2d 828, 831. Accord: *Rushing v. Polk,* 258 N.C. 256, 263, 128 S.E. 2d 675, 680; *Norburn v. Mackie,* 262 N.C. 16, 22, 136 S.E. 2d 279, 284; 26 Am. Jur., Husband and Wife § 228; 41 C.J.S., Husband and Wife § 70.

There is no evidence Katherine H. Ledbetter had any part in or knowledge of a transaction in which she was involved in any way as a purchaser. The Ledbetters lived in Concord. There is no evidence Katherine H. Ledbetter ever saw the Charlotte apartment property or that she had knowledge or notice that it was involved in any transaction between Hagerty and her husband. Although her name appears as one of the grantees in the deed, there is no evidence that she had any knowledge or notice of the existence of such deed. The evidence shows the deed was delivered by Hagerty to P. L. Ledbetter. It shows all communications and conversations relating to the transaction were addressed to P. L. Ledbetter. Jordan testified that James A. Hagerty told him the property had been sold to Mr. Ledbetter and that Mr. Ledbetter advised him that *he* (Mr. Ledbetter) had purchased the property. James A. Hagerty testified that "Mr. Ledbetter was told the terms of the $12,000.00 second mortgage and *he* agreed to assume it." (Our italics.) There is no evidence P. L. Ledbetter was authorized to act as agent for his wife in negotiations and transactions relating to said property. The evidence is silent as to when Katherine H. Ledbetter learned of the existence of the Hagerty deed and of the assumption clause therein. There is no evidence she received any benefit from said deed. Nor is there evidence of any fact tending to show her ratification of the transaction.

Plaintiff cites *Corbett v. Corbett,* 249 N.C. 585, 107 S.E. 2d 165,

and cases cited therein. She stresses the legal principles stated in *Corbett* as follows: "Where a deed is executed and recorded, it is presumed that the grantee therein will accept the deed made for his benefit. This is so, although the transaction occurs without the grantee's knowledge. Such presumption will prevail in the absence of evidence to the contrary. (Citations)" The cited cases relate to whether particular deeds were *delivered* so as to vest title in the grantees therein named. None of the deeds contains an assumption clause such as that involved herein.

"A mortgage assumption clause in a deed is not properly a part of the grant, and is not a covenant running with the land, but is a collateral undertaking, personal in nature, and contractual, relating to the consideration, and not relating to land." 59 C.J.S., Mortgages § 403. Accord: 37 Am. Jur., Mortgages § 992.

In *Blass v. Terry*, 156 N.Y. 122, 50 N.E. 953, it was contended that the defendant was obligated to pay the mortgage debt of one Howell to the plaintiffs because "Howell, in conveying a part of the land covered by the mortgage to the defendant, inserted in the deed a clause binding her to assume and pay the mortgage, and that this promise inured to the benefit of the plaintiffs." The plaintiffs offered in evidence the recorded deed containing such assumption clause. O'Brien, J., for the Court of Appeals of New York, said: "The record thus produced proves a grant of certain land therein described to the defendant, and it contains a clause assuming and agreeing to pay the mortgage thereon. But this clause does not prove a personal promise or obligation on the part of the defendant to pay the debt of a third party, in the absence of proof that she actually accepted the deed with knowledge of the assumption clause, or at least under such circumstances that she was bound to know its purport and legal effect. A clause of that character in such an instrument is, properly speaking, no part of the grant. It is a collateral undertaking, personal in its nature, not relating to the land." Again: "There may be constructive delivery of a deed, sufficient to vest title in the grantee, but it does not follow that such a delivery is sufficient to create a personal obligation on his part to pay a mortgage which is a lien on the land. In order to make the instrument effective for that purpose, enough must be shown to at least raise a presumption that it was accepted by the grantee with knowledge of the fact that it was not only a grant of the land, but contained a collateral promise on his part to pay a sum of money to some third party. The record in this case contains no such proof." Accord: *Consolidated Realty Corporation v. Dunlop*, 114 F. 2d 16 (D.C. Cir.); *Ludlum v.*

*Pinckard,* 304 Ill. 449, 136 N.E. 725, and cases cited; *Fishback v. J. C. Forkner Fig Gardens,* 137 Cal. App. 211, 30 P. 2d 586.

Where a deed contains an assumption clause or other collateral provision purporting to impose a personal liability upon the grantee, it is our opinion, and we so hold, that the mere fact that such a deed has been executed and recorded is insufficient to raise a presumption that the grantee agreed to such collateral contractual provision. Evidence that such grantee had knowledge of such provision and expressly or impliedly assented thereto, or that she ratified such provision after acquiring knowledge thereof, is required before liability may be imposed upon such grantee under the terms thereof. There being no evidence that Katherine H. Ledbetter agreed to assume and pay Hagerty's note to plaintiff or that she ratified the assumption clause in Hagerty's deed to the Ledbetters, her motion for judgment of nonsuit should have been allowed. Hence, as to her, the judgment of the court below is reversed.

We have considered the assignment of error, discussed briefly by defendants, relating to the admission of evidence. Suffice to say, we find nothing in the court's ruling that would justify a new trial as to P. L. Ledbetter or that is of any significance in respect of the liability of Katherine H. Ledbetter.

As to P. L. Ledbetter: No error.

As to Katherine H. Ledbetter: Reversed.